# United States Court of Federal Claims

No. 17-439 C
Filed: August 30, 2018

FILED

AUG 30 2018

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| LOGAN B. PRESTONBACK, | ) |
| Plaintiff, | ) RCFC 52.1; Judgment on the |
| v. | ) Administrative Record |
| THE UNITED STATES, | ) Military Pay; Voluntarily Fail; |
| Defendant. | ) Entitlement Recoupment |

*Logan B. Prestonback*, Manhattan, KS, proceeding *pro se*.

*Daniel S. Herzfeld*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

This action is before the Court on defendant's Motion for Judgment on the Administrative Record. On March 28, 2017, plaintiff, Logan Prestonback, filed his Complaint with this Court, alleging that he was wrongfully separated from the United States Army ("Army"). *See generally* Complaint (hereinafter "Compl."). Plaintiff seeks various forms of relief, including the following: "a monetary refund of $7,000 withheld from his 2014 tax" refund; "a judgment and decree setting aside" the Defense Finance and Accounting Service's ("DFAS") recoupment action against plaintiff; and "a stay of any further prosecution of such action by [DFAS] until the Court issues its final judgment and decree." Compl. at 4. For the following reasons, the Court grants defendant's Motion for Judgment on the Administrative Record.

**I.  Background**

Logan Prestonback served in the Army from May 23, 2009, until his honorable discharge at the rank of First Lieutenant ("1LT") on June 27, 2013. Administrative Record (hereinafter "AR") 18. In 2005, as part of the commissioning process at the United States Military Academy in West Point, New York, 1LT Prestonback signed his Service Agreement ("Form 5-50"), consenting to serve on active duty for five years. AR 56. Form 5-50 stipulated that, if 1LT Prestonback "voluntarily fail[ed] or because of misconduct fail[ed] to complete the period of active duty service," he would be required to repay a proportional amount of his educational scholarship. AR 57.

After commissioning as a Second Lieutenant in 2009, 1LT Prestonback completed the Army Engineer Basic Officer Leadership Course and began to serve at Fort Riley, Kansas, where he received a positive Officer Evaluation Report ("OER"). AR 49. OERs allow for Army leaders to assess and rate the quality and competency of subordinates, and serve as the administrative basis for promotions or eliminations. AR 48-49; *see also Officer Evaluation Reporting System*, Army Regulation 623-105, para. 1-8 (April 1998). Plaintiff was then deployed to Iraq from November 4, 2010 to November 7, 2011, and he was promoted to 1LT while overseas. AR 46.

In 2011, 1LT Prestonback received a negative, or "referred," OER, which stated that plaintiff "failed to follow direct lawful orders" and "only [did] specific tasks, often not completing them to standard." AR 45-46. 1LT Prestonback's comments verifying the OER's accuracy were included with the report. AR 47. In 2012, plaintiff received a second referred OER, which found "no drive or motivation within LT Prestonback, which he freely admits." AR 41-42. Plaintiff's senior rater placed him last of the seventeen First Lieutenants assessed, stating that 1LT Prestonback's "lackluster performance while deployed was a burden." AR 42. On March 19, 2012, plaintiff responded to the second referred OER, rebutting the assessment and highlighting his improvement. AR 43-44.

On December 14, 2012, the Army Human Resources Command ("HRC") initiated 1LT Prestonback's administrative separation based on "substandard duty performance," and directed plaintiff to show cause why he should not be eliminated. AR 33-34. On February 5, 2013, 1LT Prestonback responded, stating that the referred OERs were based on "opinion and absent any reason." AR 31. On May 22, 2013, the Deputy Assistant Secretary of the Army for Review Boards ("Deputy Secretary") determined that 1LT Prestonback should be separated from the Army for "substandard duty performance." AR 22. The Deputy Secretary also stated that "a recoupment action would be conducted in accordance with Army Regulation 600-8-24 and 10 U.S.C. § 2005." AR 22. On June 27, 2013, the Army discharged 1LT Prestonback. AR 18.

On September 13, 2013, DFAS informed 1LT Prestonback that he owed $30,352.01 for the balance of his educational scholarship. AR 12-13. On October 21, 2013, 1LT Prestonback filed an Application for Correction of Military Record ("Application") with the Army Board for Correction of Military Records ("the Board"), requesting that the Board waive his educational debt. AR 16. Plaintiff argued that the recoupment action was improper because he was eliminated for reasons other than those specifically listed in Form 5-50. AR 3, 9.

1LT Prestonback filed his Application with the Board on October 21, 2013. AR 16. On February 20, 2014, the Board directed plaintiff to provide supplemental documentation. AR 15. After considering plaintiff's amended Application, the Board denied his waiver request on February 5, 2015. AR 3, 7-8. The Board found that plaintiff was "eliminated from the U.S. Army because of substandard duty performance." AR 8. The Board determined that 1LT Prestonback's substandard performance fell within the scope of Form 5-50's "voluntarily fail." AR 3, 57.

On March 28, 2017, 1LT Prestonback filed his Complaint with this Court, alleging that he "cannot be liable for [scholarship] reimbursement because [he] was not terminated for misconduct, nor did he voluntarily resign," in accordance with Form 5-50's two expressly stated categories for termination. Compl. at 2. On October 6, 2017, the government filed its Motion for Judgment on the Administrative Record, arguing, *inter alia*, that plaintiff's elimination fell within the scope of Form 5-50, and that the Board's decision was reasonable. Defendant's Motion for Judgement on the Administrative Record (hereinafter "D's MJAR") at 15. On March 7, 2018, the Court dismissed plaintiff's Complaint, without prejudice, for failure to prosecute, in accordance with RCFC 41(b). Order, ECF No. 17-439, Dkt. No. 22.

On March 20, 2018, the Court vacated its dismissal in accordance with RCFC 60, finding that reopening the case was in the interest of justice, and accepted plaintiff's Response to defendant's Motion for Judgment on the Administrative Record. Order, ECF No. 17-439, Dkt. No. 24; *see generally* Plaintiff's Response to Motion for Judgment on the Record (hereinafter "P's Resp."). In his Response, 1LT Prestonback argues, *inter alia*, that the Army failed to provide adequate notice of elimination or recoupment, and that Form 5-50 should be analyzed under common law contract principles. P's Resp. at 5-6. Plaintiff also asks for a ruling of summary judgment based on the Administrative Record and the parties' motions. *Id.* at 10 (citing Rule 56(a) of the Rules of the Court of Federal Claims; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a material fact is one that "might affect the outcome of the suit.")). On May 10, 2018 the government filed its Reply in Support of its Motion for Judgment on the Administrative Record. *See* Defendant's Reply in Support of its Motion for Judgment on the Administrative Record (hereinafter "D's Reply"). In its Reply, defendant argues that statutory law governs Form 5-50, and that the Federal Circuit's understanding of "voluntarily fail" includes substandard performance. D's Reply at 3, 6.

As *pro se* plaintiffs are, by their nature, unassisted, this Court may sometimes grant a *pro se* plaintiff greater lenience throughout the filing process. In keeping with this permissive leniency, the Court construes plaintiff's Response, in which he asks for Summary Judgment, as a Cross-Motion for judgment on the administrative record. P's Resp. at 10. Had plaintiff wished to file a Reply, it would have been due on May 17, 2018. RCFC 20(b)(2). As the Court has not received such an optional Reply, the case is considered fully briefed and ripe for review.

## II. Standard of Review

This Court's jurisdictional grant is primarily defined by the Tucker Act, which provides this Court the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (2012) (emphasis added). Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

The Court reviews decisions of military correction boards based upon the Administrative Record. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). When a party requests judgment on the Administrative Record under RCFC 52.1, the Court makes findings of fact as if it were conducting a trial on a paper record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id.* at 1355.

There is a deferential standard when reviewing military personnel decisions, and this Court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). Further, the Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach different conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Finally, the plaintiff must overcome the presumption of regularity which attaches to actions of the military and military records correction boards. *Armstrong v. United States*, 205 Ct. Cl. 754, 762-63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary) (citations omitted).

### III. Discussion

#### A. Statutory Rights and Contract Principles

Defendant argues that the Board's decision was reasonable, as plaintiff's "substandard performance constituted a voluntary failure" pursuant to the terms of Form 5-50. D's MJAR at 15. Plaintiff attempts to circumvent the Board's decision, and argues that, because he signed Form 5-50 as a contract, the Court should analyze the recoupment action according to common law contract principles. P's Resp. at 6; AR 56-57. In response, defendant posits that the Court should review the Administrative Record, including the Board's decision, in line with the Administrative Procedure Act. D's Reply at 2 (referencing 5 U.S.C. § 500).

This Court predominantly adopts a deferential posture toward military personnel actions. *Chambers*, 417 F.3d at 1227; *Armstrong*, 205 Ct. Cl. at 762-63; *Walls*, 582 F.3d at 1367. As defendant notes, once plaintiff appealed to the Board, its decision became part of the Administrative Record, and the Court cannot ignore the Board's decision. D's Reply at 2 (citing *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006)); AR 3. As such, this Court agrees with the government's position and must review plaintiff's case in accordance with the Administrative Procedure Act.

Precedent dictates that agreements memorialized by documents such as Form 5-50, which entitle service members to compensation, rest upon a statutory right, and therefore should not be analyzed according to common law contract principles. *Schism v. United States*, 316 F.3d 1259, 1272 (Fed. Cir. 2002) (*en banc*); *United States v. Larionoff*, 431 U.S. 864, 869 (1977); *Bell v. United States*, 366 U.S. 393, 401, (1961). This Court reviews scholarship agreements according to these well settled principles. *Kennedy v. United States*, 124 Fed. Cl. 309, 324 (2015) ("The

scholarship agreement upon which plaintiff relies is not…an independently enforceable contract."), *rev'd on other grounds*, 845 F.3d 1376, 1381 (Fed. Circ. 2017) ("The Court of Federal Claims found that it lacked jurisdiction to entertain Mr. Kennedy's first three contact-based claims. Mr. Kennedy does not appeal that ruling, and we thus need not consider those claims."). At present, this Court will not deviate from that well established precedent.

### B. Form 5-50 and "Voluntarily Fail"

In its Motion, defendant argues that the terms of Form 5-50 were not exclusive, and therefore the Board reasonably characterized an involuntary separation for substandard performance as a "voluntary fail[ure]." D's MJAR at 20 (referencing AR 8). 1LT Prestonback contends that financial recoupment was proper only in the event of his willful resignation or engagement of misconduct, as those were the only enumerated justifications for termination in Form 5-50. P's Resp. at 8-9 (citing AR 56). Plaintiff further argues that, because none of the terms within Form 5-50 expressly apply to his separation, granting the government's Motion for Judgment on the Administrative Record would require the Court to infer an unreasonable meaning from either "voluntary" or "misconduct." *Id.* at 9-10. However, the Courts have previously held that the term "voluntarily failed" can extend to actions other than a soldier's willful resignation from the military. *See e.g. Favreau v. United States*, 317 F.3d 1346, 1360 (Fed. Cir. 2002).

The relevant section of Form 5-50 reads, in part, "the term 'voluntarily fail' includes, but is not limited to." AR 56. The Court interprets this language to mean that the factors listed were not exhaustive. Both plaintiff and defendant acknowledge that the parameters of Form 5-50 were "non-exclusive." D's Reply at 2; P's Resp. at 8. The non-exclusive nature of Form 5-50's criteria indicates that the Army could potentially terminate a service member for reasons not expressly listed. As such, factors not expressly listed in Form 5-50 can be used as a basis of recoupment. *See e.g. Favreau* 317 F.3d at 1360.

Additionally, defendant asserts that, because the plaintiff's voluntary actions prompted his involuntary separation, such separation should be construed as "voluntarily fail[ing]" under Form 5-50. D's MJAR at 18 (citing *Favreau* 317 F.3d at 1357-58). Plaintiff argues that, if the Army had intended to include involuntary termination for substandard performance within the scope of "voluntarily fail," such language would have been expressed in Form 5-50. P's Resp. at 9. The reasonableness of the Board's decision turns on whether the Board properly understood "voluntarily fail" to include willful actions leading to an involuntary separation, and not as an overall intent to leave the Army.

Looking to legislative and legal history, this Court is persuaded that "voluntarily fail" reasonably includes willful actions leading to an involuntary separation. The statutory framework provides that failure to complete the prescribed term of active duty or failure to "fulfill any term or condition prescribed pursuant to . . . such other terms and conditions as the Secretary concerned may prescribe to protect the interest of the United States" shall trigger repayment actions. 10 U.S.C. §2005 (a)(3)-(4) (2017). The corresponding statutory repayment provisions state that a service member who fails to "satisfy certain eligibility requirements" will repay "an equal amount [of] the unearned portion of the bonus or similar benefit" or "any

unearned portion of the bonus, incentive pay, or similar benefit." 37 U.S.C. §§303(e)(1)(A) (2011), 373(a) (2009). The applicable regulation, which contains those terms and conditions, states that substandard performance could lead to an involuntary termination from the armed forces. *Officer Transfers & Discharges*, Army Regulation 600-8-24, para. 4-2 (Feb. 24 2005).

This Court has long held that a failure to maintain physical standards can qualify as a voluntary fail that can trigger a recoupment action. *Favreau* 317 F.3d at 1360. It seems reasonable to this Court that the Board could view performance standards in a similar manner to physical standards. Therefore, 1LT Prestonback's referred OERs could reasonably be interpreted as a voluntary failure to fulfill the terms of his service requirement in violation of Form 5-50, which in turn triggered an involuntary separation ripe for recoupment actions. As such, this Court finds that the Board reasonably concluded that plaintiff's involuntary termination for substandard performance fell within the terms of Form 5-50. It follows that it was neither arbitrary, capricious, nor contrary to law for the Board to deny plaintiff's recoupment waiver request.

### C. Agency and Notice

In his Complaint, 1LT Prestonback claims that a representative of DFAS conveyed that he would not be subject to recoupment action for his educational debt. Compl. at 3. Plaintiff implies the Board's decision was unreasonable because it conflicted with this assurance. Defendant argues that the DFAS employee was not a proper agent with authority to make those guarantees, and, therefore, those representations were not binding. D's MJAR at 21-22 (citing *Perez v. United States,* 156 F.3d 1366, 1373 (Fed. Cir. 1998) (refusing to credit "erroneous advice" to a service member from an unauthorized agent); *Fed Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384 (1947)).

Defendant argues that the "Secretary concerned" is empowered to set the terms and conditions for education assistance, including recoupment. 10 U.S.C. §2005 (a)(3)-(4) (2017). Defendant contends that the Deputy Secretary, as the designee of the Secretary of the Army, is the empowered authority, and, as such, the Deputy Secretary's decision to separate plaintiff for his referred OERs is binding. D's MJAR at 20-21 (citing *Fed Crop Ins. Corp.*, 332 U.S. at 384; 10 U.S.C. § 2005(a) (2017)). Plaintiff disagrees, arguing that the DFAS employee making such assertions "appeared to be no less authorized…as any other Army civilian" to speak on behalf of the Agency. P's Resp. at 3.

Looking to the Administrative Record as a whole, this Court finds that the issue of agency had no impact on the Board's decision to deny plaintiff's request for a recoupment waiver. The relevant statute is clear that the "Secretary concerned" shall enforce the statute, and the Secretary of the Army did so through the Deputy Secretary's actions. 10 U.S.C. § 2005(a) (2017). Informal assurances from a DFAS employee do not supplant the Deputy Secretary's authority.

In his Complaint, 1LT Prestonback also alleges the Board's decision was unreasonable, as he was not given proper notice of the Agency's recoupment action. Compl. at 3. Plaintiff contends that he was never notified about the recoupment action during the pendency of his

separation process, pointing to his OERs, the December 14, 2012 Show Cause Memorandum, and the recommendations from his chain of command to support his proposition. P's Resp. at 3-4 (referencing AR at 26-28, 30, 33-35, 38-42, 45-46, 48-50). Defendant maintains that the terms of Form 5-50 constituted proper notice that his involuntary separation could result in recoupment action. D's MJAR at 15; D's Reply at 7.

This Court agrees with defendant's position. The language of Form 5-50, which stated that if he "voluntarily fail[ed]" to complete his service requirement, 1LT Prestonback would "reimburse the United States" for the unearned portion of his scholarship, constituted proper notice of recoupment. *See* AR 56. Additionally, the Army explicitly cited Army Regulation 600-8-24, "Officer Transfers and Discharges," in its December 14, 2012 memo titled "Initiation of Elimination." *See* Army Regulation 600-8-24; AR 33-34. Plaintiff responded to that memo, *see* AR 31-32, which indicates to this Court that 1LT Prestonback understood that he was subject to the terms of that regulation. The Court is persuaded that plaintiff received sufficient notice that "voluntarily fail[ing]" to complete his service requirement would result in an involuntary separation and ensuing recoupment. As such, the Board's decision was reasonable.

### IV.     Conclusion

For the reasons set forth above, defendant's MOTION for Judgment on the Administrative Record is **GRANTED**. Plaintiff's Response, which this Court interprets as a CROSS-MOTION for Judgment on the Administrative Record, is **DENIED**. The Clerk is directed to enter judgment in favor of defendant, consistent with this opinion.

**IT IS SO ORDERED.**

Loren A. Smith, Senior Judge